UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARINA ALEJANDRA GARCIA MARIAGUA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Defendants. | No. 1:25-cv-01744-DJC-CSK<br><br>ORDER |

Petitioner is an asylum seeker from Venezuela who entered the United States in May of 2024.  (Pet. (ECF No. 1) ¶¶ 1–2.)  On December 3, 2025, Petitioner reported to a United States Immigration and Customs Enforcement ("ICE") field office on the instruction of the Intensive Supervision Appearance Program ("ISAP") and ICE officers detained her, purportedly pursuant to 8 U.S.C. § 1225(b).  (Pet. ¶ 39; Opp'n (ECF No. 8) at 4.)  Petitioner is presently in ICE custody at the California City Detention Facility.  (Pet. ¶ 43.)

On December 5, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing that her present detention violates her due process rights.  (ECF Nos. 1, 4.)  In numerous cases, district courts in this Circuit have applied a similar approach.  Based on the substantial weight of this

authority and for the reasons stated below, the Court grants Petitioner's Motion for Temporary Restraining Order. The Court orders Petitioner released and will set a further briefing schedule on a Motion for Preliminary Injunction.

## BACKGROUND

Petitioner is a 29-year-old asylum seeker from Venezuela who entered the United States in May of 2024, fleeing threats of violence. (Pet. (ECF No. 1) ¶¶ 1–2.) Upon arriving, Petitioner made contact with immigration officials, who released Petitioner on her own recognizance. (*Id.* ¶ 36; Gavigan Decl. (ECF 3), Ex. B at 12.) Since her release, Petitioner has complied with monitoring requirements. (Pet. ¶ 36.) ICE first used an ankle monitor to track Petitioner and later de-escalated her supervision to the weekly submission of a photo on an app. (*Id.*) She consistently complied with this requirement until a few weeks ago, when the app did not prompt her to do so with the usual sound notification. (*Id.* ¶ 39.) ISAP then informed Petitioner that she had not yet sent her photo that day, and she immediately complied, submitting the photo on the same business day. (*Id.*) On December 3, ISAP directed Petitioner to go to an ICE field office. (*Id.*) She complied, waited in line to speak with an ICE agent, and then was taken into custody. (*Id.*)

Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for Temporary Restraining Order. (ECF Nos. 1, 4.) Briefing on the Motion for Temporary Restraining Order is now complete. (Mot. (ECF No. 4-1); Opp'n (ECF No. 8); Reply (ECF No. 10).) The Court ordered this matter submitted without oral argument. (*See* ECF No. 5.)

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her

favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success. *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

## DISCUSSION

### I. Likelihood of Success on the Merits

#### A. Detention and Removal under Sections 1225 and 1226

Petitioner is likely to succeed on the merits of her claim that she has been unlawfully detained under 8 U.S.C. § 1225. Respondents assert that Petitioner is subject to the mandatory detention requirement of 8 U.S.C. 1225(b)(2)(A). (Opp'n at 4). Petitioner counters that she is not subject to Section 1225 but rather to Section 1226(a), which entitles her to a bond hearing. (Reply at 6–8.)

Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States. However, Section 1225 provides for mandatory detention of certain individuals, while Section 1226 establishes a discretionary detention scheme. Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). In contrast, under Section 1226's discretionary scheme, a noncitizen may be detained pending a decision on their removal. 8 U.S.C § 1226(a). Section 1226(a) affords noncitizens a statutory right to a bond hearing before an immigration judge. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) (citing 8 C.F.R. § 1236.1(d)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) "At that hearing, the noncitizen may present evidence of

1 | their ties to the United States, lack of criminal history, and other factors that show they
2 | are not a flight risk or danger to the community." *Bostock*, 779 F. Supp. 3d at 1256.
3 |       This Court agrees with Petitioner that she is likely subject to Section 1226(a)'s
4 | discretionary detention scheme rather than Section 1225(b)(2)'s mandatory detention
5 | scheme.  Respondents argue Petitioner is an "applicant for admission" within the
6 | meaning of Section 1225 because "she has yet to receive authorization from
7 | immigration authorities to be here." (Opp'n at 4.)  However, this Court has previously
8 | joined numerous other courts within this Circuit in rejecting this broad reading of
9 | Section 1225. *See Solano Morillo v. Albarran*, No. 1:25-cv-01533-DJC-AC, 2025 WL
10 | 3190899, at *3–4 (E.D. Cal. Nov. 15, 2025); *see also Bostock*, 779 F. Supp. 3d at 1257
11 | (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should
12 | be read to narrow mandatory detention under that subsection to noncitizens who are
13 | apprehended while seeking to enter the country, and that noncitizens already residing
14 | in the United States, including those who are charged with inadmissibility, continue to
15 | fall under the discretionary detention scheme in Section 1226") (internal quotation
16 | marks omitted); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL
17 | 3013328, at *6–7 (E.D. Cal. Oct. 27, 2025).  Instead, Section 1225 applies solely to
18 | those arriving at the border while Section 1226 applies to those already present within
19 | the United States.  As this Court has previously explained, Respondents' argument
20 | that this term extends beyond the border to reach those who have been present
21 | within the United States for a meaningful period of time would contravene decades of
22 | agency practice and render significant swaths of this statute surplusage. *See Solano*
23 | *Morillo*, 2025 WL 3190899, at *3–4.
24 |       It is uncontested that Petitioner was originally detained in May 2024 and was
25 | released on her own recognizance that same month.  (Pet ¶ 56; Opp'n at 1.)  It is also
26 | uncontested that Petitioner was taken into ICE custody on December 3, 2025, a year
27 | and a half after Petitioner entered this country. (Pet ¶ 56; Opp'n at 2.)  Petitioner's
28 | Order of Release on Recognizance specifically states that Petitioner was released

1  pursuant to Section 1226.  (Gavigan Decl., Ex. B at 12.)  Thus Section 1225(b)(2) flatly
2  does not apply to Petitioner.  As the government does not assert any other statutory
3  basis justifying her detention, Petitioner is likely to succeed on the merits of her claim
4  that she has been unlawfully detained.

### B. Due Process

Petitioner has also established likelihood of success on the merits of her due process claim.  The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  While noncitizens located outside the country are not granted the full protections of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings, including final deportation orders. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Petitioner has a liberty interest in her continued freedom.  As has been detailed by this and numerous other Courts, individuals released from ICE custody have a protected interest in remaining out of custody. *See Lopez v. Lyons*, No. 2:25-cv-03174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972)).  Petitioner was released on her own recognizance by the Government in May 2024 and, since that time, has remained out of custody. (Pet. ¶ 2; Mot. at 9.)  Therefore, Petitioner has a clear liberty interest in her continued freedom, and the Court must determine what process is due.

To determine what process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining her out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Petitioner has remained out of custody for a year and a half. During this time, Petitioner has built a life with her partner in San Francisco, where she hopes to raise a family. (Mot. at 10.) Petitioner works for DoorDash and cleans houses in San Francisco. (Pet. ¶ 4.) She attends a local church and has been taking two online courses, English and Marketing. (*Id.*) Petitioner's release with certain monitoring conditions has permitted her to build a life within the bounds of those conditions. Petitioner has a substantial private interest in being out of custody, and her detention denies her that liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

The risk of erroneous deprivation is also considerable. Petitioner was previously released of her own recognizance (Mot. at 9), meaning immigration officials have necessarily already determined that Petitioner does not pose a risk of flight or danger to the community based on an individualized assessment of her circumstances. *See Pinchi v. Noem*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").

6

The record also suggests Petitioner has never received a bond hearing that would facilitate reassessment of any risk she poses based on changed circumstances. (Mot. at 12.) "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306, (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Detention under this statute is justified only when a noncitizen poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. Petitioner asserts, and Respondents do not contest, that Petitioner has no criminal record. (Mot. at 9.) Though Petitioner was detained after submitting one of her weekly photos a few hours late (Pet. ¶ 39), Respondents have not argued this mistake nor any other change in circumstances indicates she is a flight risk or otherwise justifies her current detention. Thus, the value of additional procedural safeguards here is substantial.

Finally, Respondents' interest in detention is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *see also Hernandez*, 872 F.3d at 994. Again, Respondents do not argue Petitioner is a flight risk, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.

Having found Petitioner has a liberty interest and determined, via the *Mathews* factors, that she is entitled to process that should have been afforded to her immediately upon detention, the Court finds Petitioner has established a likelihood of success on the merits of her due process claim. *See M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *12 (E.D. Cal. Nov. 12, 2025) (holding petitioner who was released on own recognizance and then re-detained by ICE without a hearing likely to succeed on merits of due process claim); *Ramandi v. Field Office Director*, No. 1:25-cv-01462-JLT-EPG, 2025 WL 3182732, at *11 (E.D. Cal. Nov. 14, 2025) (same).

**II. Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of a temporary restraining order. Petitioner believes she is pregnant as she has missed multiple menstrual cycles

and has other symptoms of pregnancy.  (Pet. ¶ 8.)  The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities."  *Hernandez*, 872 F.3d at 995.  Such conditions pose "a great risk to her health as a pregnant person." (Pet. ¶ 12.)  Petitioner also suffers from severe allergies for which she nightly takes Cetirizine, a medication she has been unable to access in detention despite her Counsel requesting it for her from ICE agents multiple times.  (*Id.* ¶ 8.)

More broadly, Petitioner "suffers potentially irreparable harm every day that [she] remains in custody without a hearing, which could ultimately result in [her] release from detention."  *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018).  The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention."  *Hernandez*, 872 F.3d at 995.  Petitioner has thus established irreparable harm.

**III. Balance of the Harms & the Public Interest**

The final two *Winter* factors merge when the government is the nonmoving party.  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).  "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members."  *Hernandez*, 872 F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).

Here, the interests of equity and the public weigh in favor of Petitioner.  Petitioner's partner is harmed by her ongoing detention.  A temporary restraining order also inflicts minimal harm to the government.  Though Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here.  This Order instead furthers that interest through application of the correct law.  Finally, this relief benefits the public.  "[N]either equity nor the public's interest are furthered by allowing violations of

federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 4) is GRANTED;
2. Petitioner Karina Alejandra Garcia Mariagua shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on her, unless they are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating her arrest and detention – and a

timely hearing.  At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have her counsel present.[1]

4. Respondents are ORDERED TO SHOW CAUSE on or before December 18, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order.  On or before December 22, 2025, Petitioner may file a reply.  No hearing is scheduled on the Motion for Preliminary Injunction, although the Court may schedule one if it determines a hearing is necessary.

IT IS SO ORDERED.

Dated:   **December 11, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – GarciaMariagua25cv01744.tro

---

[1] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here.  *See, e.g.*, *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).